Barbara J. KEY, et al., Plaintiffs,

v.

The GILLETTE COMPANY, Defendant.

Civ. A. No. 75–4934–C.

United States District Court,
D. Massachusetts.

June 19, 1981.

Robert J. Pleshaw, Washington, D. C., Douglas F. Seaver, James J. Marcellino, Gaston Snow & Ely Bartlett, Mary H. Halliday, Boston, Mass., for plaintiffs.

Richard L. Neumeier, Parker, Coulter, Daley & White, Boston, Mass., for defendant.

## MEMORANDUM

CAFFREY, Chief Judge.

This class action against The Gillette Company alleges discrimination based on sex against female employees and potential employees in managerial, professional and supervisory positions. Monetary damages and declaratory relief are sought.

The complaint was filed in November 1975 and amended in October 1978. On September 11, 1979, another Judge of this Court tentatively certified the case as a class action under Fed.R.Civ.P. 23(b)(2). The action proceeded on the basis that the plaintiff was an adequate representative of a class including all females who were employed, who sought employment, or who were deterred from seeking employment, in managerial, professional, supervisory or administrative positions, with The Gillette Company at its Massachusetts facilities during the years 1968–1975, inclusive. The Court Order that granted certification explicitly reserved the right to alter, amend, or revoke the class certification. Following eighteen more months of discovery, the case is now before the Court on the defendant's motion to revoke or modify class certification and on the plaintiff's motion for leave to give notice to class members.

1. The *Stastny* case, *supra* at 274, goes as far as to observe that in certain instances under Title VII the class certification decision is "roughly

### I. Revocation of Class Certification

■ The Court is aware that class certification "is essentially an exercise of discretion by the district court." *Lamphere v. Brown University*, 553 F.2d 714, 719 (1st Cir. 1977); *DeGrace v. Rumsfeld*, 614 F.2d 796, 809 (1st Cir. 1980). The decision to certify a class, once it is made, is only a "tentative determination." *Stastny v. Southern Bell Tel. and Tel. Co.*, 628 F.2d 267, 277 (4th Cir. 1980). A court must "follow closely the developing evidence as to class-wide decision-making and ... take seriously its power under 23(c)(1) to alter or amend its certification order before the decision on the merits." *Lamphere, supra* at 720. The obligation to review the evidence and monitor the class action is particularly important here, where responsibility for the case has shifted from a distinguished colleague to the present writer.

■ The decision to certify a class is distinct from a review of the merits of a case. Certification asks in part whether there are common questions of law or fact, and whether a representative's claim is typical of the class. It does not suggest how the common questions will be answered or whether any claim will be proved. *Lamphere, supra* at 718 n.11. The plaintiff's burden at this stage remains that of demonstrating that a prima facie case exists, that the commonality criteria of Fed.R.Civ.P. 23(a) are met within the context of Title VII theories of liability, and that a class is appropriate under Rule 23(b).[1]

■ The Gillette Company makes much of the fact that the plaintiff has failed to identify other potential class members with claims similar to hers, and therefore Gillette contends that the prerequisites of Rule 23(a) are not satisfied. I find to the contrary that the demands of Rule 23(a), and particularly Rule 23(a)(1), are met. On February 23, 1981, this Court allowed plaintiff's motion to contact ten potential class members for discovery information. Much of the plaintiff's inability to identify other

comparable" to a merits inquiry. That position is not adopted here.

class members with similar claims before then may have been due to the cautionary court order of September 9, 1976, which barred unapproved communications with possible class members. Moreover, statistics offered by the plaintiff concerning class size reveal that the numerosity requirement of Rule 23(a)(1) has been met.[2]

■ The defendant's reliance on *Patterson v. General Motors Corp.*, 631 F.2d 476 (7th Cir. 1980), to illustrate that the plaintiff's claims fail to raise class-wide issues consistent with Rule 23(a)(2) and (a)(3) is misplaced. The court observed in that case that the complaint "was not framed in class action terms at all," and that the action related "solely to plaintiff's personal grievances." *Patterson, supra* at 480. In contrast, both the complaint and the amended complaint in this action state class-wide claims and constitute a frontal attack on Gillette's employment policies. "When the named representative's own claim transcends the individual and implicates a discrete employment practice, the commonality and typicality requirements of Fed.R. Civ.P. 23(a) may be satisfied and class treatment may be appropriate." *DeGrace, supra* at 811.

Gillette argues that plaintiff fails to meet the demands of Rule 23(a) for a third reason, that her adequacy as a representative of the class is in doubt due to her lack of interest in litigating and her potential hostility to the interests of other class members. The docket of this case speaks for itself, and within the last eighteen months there has been considerable discovery by both sides, certainly enough to satisfy the Court that the plaintiff is taking her representative status under Fed.R.Civ.P. 23(a)(4) seriously. The plaintiff is an adequate representative of "exempt" Gillette female employees at all Massachusetts facilities during the relevant time period, and Gillette's concern for eliminating possible conflicts and hostile interests in the class is accommodated in class modifications discussed below in Part II.

■ In alleging that Gillette violated 42 U.S.C. § 2000e et seq. the plaintiff may proceed with at least two theories of liability. She may seek to prove that Gillette followed regular or standard operating procedures which so demonstrably treated women unfavorably that one can infer a specific intent to discriminate against women as a class on the basis of sex, *Teamsters v. United States*, 431 U.S. 324, 336, 97 S.Ct. 1843, 1855, 52 L.Ed.2d 396 (1977); *Stastny, supra* at 273. Alternatively, plaintiff may attempt to show that Gillette practice or policy, though demonstrably neutral, had a discriminatory impact on women and lacked any justification of business necessity. *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). Gillette argues that this case falls under the former theory, if any, while the plaintiff contends that the latter theory is in issue, both parties apparently being aware that the commonality criteria of Rule 23(a) may be more easily met under the discriminatory impact theory. *Stastny, supra* at 274 n.10. The Court notes that plaintiff, herself, may be in doubt as to which theory to pursue. In plaintiff's original memorandum in support of her motion to certify a class, filed on June 22, 1979, reference is made to "a pattern and practice of *disparate treatment* of female employees ..." (p. 10). Plaintiff's memorandum on the current motion, filed on February 12, 1981, states in contrast that "this case has thus been from its inception a *disparate impact* case." (p. 4) (emphasis added). To the plaintiff's credit, however, the Court also observes that this case is unlike the *Stastny* case, *id.*, where ultimate reliance would have been placed on the disparate treatment theory, in that this litigation has been a class action attacking general corporate policies from its inception, even before any amended complaint was filed. The allegations are consistent with a disparate impact theory of liability.

2. Plaintiff's memorandum in support of the September 1979 certification stated that "1973 and 1974 EEO-1 forms for Gillette's Massachusetts facilities indicate that approximately 266 females were employed by the defendant in professional and official and managerial positions during 1973 and 1974."

The Court need not resolve liability theories at this stage of the controversy, except to rule that the plaintiff has a sufficiently strong prima facie case on either theory of liability to withstand a motion to decertify at this time. That ruling is based on statistical disparities in employment figures, some of which were before the Court at the time of the September 1979 certification, as well as other information in the discovery record, including individual observations.

The plaintiff has offered evidence which purports to show a significant underrepresentation of females in higher-paying exempt Gillette jobs. Such evidence might suggest discrimination in promotional policy, discrimination in hiring, or arguably on Gillette's behalf, nothing but an inadequate labor pool. Given the modifications in class ordered below in Part II, this Court finds the evidence significant as it bears on promotion and pay policy, but not hiring policy. The significance of the ratio of underrepresentation also turns on the development of appropriate comparative figures. *Hazelwood School District v. United States*, 433 U.S. 299, 312, 97 S.Ct. 2736, 2744, 53 L.Ed.2d 768 (1977). Plaintiff compares the percentage of women employed at Gillette in the relevant jobs with the availability of qualified women in the state of Massachusetts and then in the Greater Boston area. Whether those comparisons are appropriate is a determination that requires more evidence and evaluation. Unlike the statistics used and criticized in *Stastny, supra* at 279, the plaintiff did provide a facility breakdown of the alleged disparities, rather than presenting a statewide aggregate.

The plaintiff also offers some evidence at this stage which bears on alleged disparities in Gillette's salary policy during the relevant time period. An expert's analysis apparently suggests that women's salaries were between roughly 75% and 80% of the salaries of men of equal age, seniority and education in the same facility.

The plaintiff's prima facie case is buttressed by her sworn allegations, by some deposition testimony of various individuals, and by some of the discussion of Gillette's general promotional policies found in other discovery material, particularly the adequacy of blanket managerial selection of employees for promotion, complemented by the Promotion Transfer Search System and the Management Inventory Review System.

Although I rule that the class certification be maintained, because the plaintiff's prima facie case has "not been destroyed by defendants' submissions," *Lamphere, supra* at 718, I also observe that the certification issue remains an open question, with revocation a possibility at some later point in time, even during the trial on the merits. Some of the issues that will influence that decision follow: Are Gillette's management decisions on promotion and salary policy centralized and uniform? How uniform or diverse is the membership of the certified class? Were the jobs in question filled from statewide labor pools, from facility-related pools, or from some intermediate pools? See *Stastny, supra* at 277.

## II. Class Modifications

Although decertification is unwarranted at this time, a review of the record before the Court has prompted consideration of several class modifications.

First, Gillette argues that any Title VII liability should be restricted to the time period of July 19, 1972 through December 31, 1975. It turns to *Mohasco Corp. v. Silver*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980), for the proposition that Title VII liability only extends to 240 days before the filing of the EEOC charge.[3] *Mohasco* does not stand for that proposition. The Supreme Court held in *Mohasco* that filing an EEOC letter in a deferral state 291 days after the alleged discriminatory practice occurred was not timely within the statute, 42 U.S.C. § 2000e–5(e), because the mandatory 60 day deferral period had to be

---

**3.** The EEOC charge in the present case was filed on March 16, 1973, and July 19, 1972 represents the 240 day mark.

included in the statutory period of 300 days, 42 U.S.C. § 2000e–5(c). In other words, in a deferral state like Massachusetts one has 240 days to file an EEOC charge. The plaintiff in this case did not wait 240 days after she left Gillette to file her EEOC letter. The charge was filed on March 16, 1973, two weeks before her employment ended and the alleged discriminatory practices stopped in regard to her. *Mohasco* dealt with a single act of alleged discrimination, not a continuing discriminatory promotion policy. It dealt with a late EEOC filing, not a timely one. I find that the plaintiff filed her EEOC complaint during the life of any alleged Title VII violation, *Goldman v. Sears Roebuck & Co.*, 607 F.2d 1014 (1st Cir. 1979) *cert. denied* 445 U.S. 929, 100 S.Ct. 1317, 63 L.Ed.2d 762 (1980), and therefore I rule that the class period remains 1968–1975 inclusive, from the year that plaintiff's employment began to the year that the district court action was filed.

■ Second, Gillette seeks to narrow the class to Gillette female employees at the two facilities at which the plaintiff worked. I rule against this modification at the present time, given that the plaintiff's statistics cover all Massachusetts facilities, with appropriate breakdowns, and given that the plaintiff's allegations constitute an attack on general corporate policy. The Court leaves open the appropriateness of such a modification at a later point in time, depending on the development of evidence.

■ Third, Gillette proposes that the plaintiff class be narrowed to female Gillette employees in the relevant jobs during the relevant time period for the relevant geographic area. Applicants and deterred applicants would be excluded. Whether or not an employee may also represent applicants in Title VII class actions turns on "the particular circumstances of each case," and whether or not "the challenged hiring procedures are closely akin to the very transfer or promotion procedure about which the named plaintiff-employee complains." *DeGrace, supra* at 809. "Where this community of interest does not exist, employees have been barred from repre-

senting applicants for employment." *De-Grace, Id.*

■ Plaintiff did not allege that Gillette's hiring policies were discriminatory when she filed her EEOC charge on March 16, 1973. The plaintiff specifically stated on her EEOC form that she was "discrimi-nated against in the matters of wages, promotions, and benefits . . ." (Exhibit A, Unamended Complaint). When the plaintiff filed for class certification in 1979, she admitted that at the time of her hiring "she was recruited by Gillette through an agency in New York." (Memorandum in Support of Class Certification, p. 6). Nothing in the record, aside from the most general statistical disparities, supports plaintiff's allegations of discriminatory hiring policies by Gillette. Even if those policies do exist, the plaintiff would not have a typical claim or share common questions of law or fact with applicants. To the extent that plaintiff has any individual interest in hiring policy, it is to show the prevalence of salary disparities, not the presence of hiring barriers confronted by unsuccessful applicants.

A recent observation of the Fourth Circuit underscores the reason for modification here: "The interest of these named, employed plaintiffs in being free of discrimination in job assignments and in promotions is so different in kind from that of people who were denied any employment that the named plaintiffs may not properly maintain an action for redress of alleged discrimination in hiring." *Hill v. Western Electric Company*, 596 F.2d 99, 102 (4th Cir. 1979). The prerequisites of Rule 23(a) fall apart when this action is extended beyond employees to applicants and I rule that the class certification of September 11, 1979 should be modified so that it includes only female Gillette employees, and does not include applicants or deterred applicants.

### III. *Class Notice*

Although notice is discretionary with a Rule 23(b)(2) class, *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 254 (3rd Cir. 1975) *cert. denied* 421 U.S. 1011, 95 S.Ct.

2415, 44 L.Ed.2d 679 (1975), it may be helpful to all parties concerned where monetary claims for back pay are at stake. In such circumstances, "the balance swings in favor of the provision of some form of notice." *Johnson v. General Motors*, 598 F.2d 432, 438 (5th Cir. 1979) *reh. denied* 605 F.2d 554 (1979). Notice helps the development of the class monetary claims, and provides res judicata protection for the defendant.

 I rule that some fair, economical and efficient notice is appropriate at the present time for this class action. Plaintiff will mail at her own expense the notice form appended hereto, which follows the plaintiff's suggested form closely, and yet reflects some of Gillette's concerns. The mailing will be to all females who were exempt Gillette employees in Massachusetts at any time during the class period, 1968–1975. Such manner and form of notice are reasonable, *Fowler v. Birmingham News Co.*, 608 F.2d 1055 (5th Cir. 1979), and no other notice is authorized.

Order accordingly.

## APPENDIX

## NOTICE TO CLASS

Barbara J. Key, an exempt employee in the personnel department of The Gillette Company during the years 1968–1973,* has filed in the United States District Court for the District of Massachusetts a legal case against The Gillette Company. In her case, Barbara J. Key claims that The Gillette Company has violated federal equal employment opportunity laws by discriminating against females in its hiring and promotion practices with respect to managerial, professional, supervisory and administrative positions. Such discrimination is alleged to have taken place during the years 1968–1975, inclusive. On September 11, 1979, the Court tentatively certified this action as a class action.

The Gillette Company has denied all charges of discrimination and has denied liability to Barbara J. Key or to any member of the plaintiff class.

* Barbara J. Key voluntarily left Gillette in March 1973.

This notice is being sent to you in the belief that you may be a member of that class of plaintiffs whose rights may be affected by this case. This notice is not to be understood as an expression of any opinion by this Court as to the merits of any of the claims or defenses asserted by either side in this litigation, but is sent for the sole purpose of informing you of the pendency of this case so that you may make appropriate decisions as to steps you may wish to take in relation to this lawsuit.

If Barbara J. Key wins her case, members of the plaintiff class may be entitled to recover damages in the form of back pay for years during the period 1968–1975 for which it is determined that such individuals were denied advancement by The Gillette Company because of illegal discriminatory reasons.

If Barbara J. Key loses her case and The Gillette Company wins, members of the plaintiff class will be forever barred from asserting the claims at issue in the present action.

THEREFORE, TAKE NOTICE:

If you are female and were employed in a managerial, professional, supervisory or administrative position with The Gillette Company between the years 1968–1975:

a. You will be included in the class described above, and will be bound by the result, whether favorable or unfavorable.

b. If you wish, you may request that the Court permit you to be personally represented in this action through your own counsel, but if you choose to do so you must notify the Court no later than July 20, 1981.

Please address all requests and other communications commenting upon the conduct of this action to:

George F. McGrath, Clerk

United States District Court

1525 United States Post Office and Courthouse

Boston, MA 02109