Virginia SESSUM

v.

HOUSTON COMMUNITY COLLEGE.

C.A. No. H–77–404.

United States District Court,
S. D. Texas,
Houston Division.

June 7, 1982.

Gordon Cooper, III, Houston, Tex., for plaintiff.

Kelly Frels, Bracewell & Patterson, Houston, Tex., for defendant.

## ORDER

CARL O. BUE, Jr., District Judge.

Plaintiff initiated this employment discrimination action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (1978), the Civil Rights Act of 1866, 42 U.S.C. § 1981 (1974), and 42 U.S.C. § 1983 (1979), on behalf of herself and, pursuant to rule 23(b)(2), Fed.R.Civ.P., on behalf of all other Blacks who have been discriminated against by the defendant, Houston Community College. On September 17, 1979, the Court provisionally certified a class consisting of:

> All Black former, present and future full-time employees in administrative and faculty positions of Houston Community College who were in the employment of defendant on or after March 14, 1975, plus all Black applicants for full-time administrative and faculty positions who made application on or after March 14, 1975, that date being two years prior to the date this suit was filed.

At a conference in Chambers on April 20, 1981, the parties indicated that they had settled tentatively the individual plaintiff's claim. The parties stated also that as evidence supporting the class allegation of discrimination was absent, the parties would file an appropriate motion to decertify the class. Subsequently, on April 27, 1981 the parties filed an agreed motion to decertify the class. In their motion, the parties requested that the Court decertify the class on the basis that extensive discovery completed by plaintiff after the certification of the class "revealed the lack of viability of the conditionally certified class." Agreed Motion to Decertify the Class at 2. In further support of their motion, the parties asserted that because of plaintiff's long absence from the defendant college, such ab-

sence resulting in plaintiff's "lack of knowledge and familiarity with the College's policies, and procedure, and personnel," Agreed Motion to Decertify the Class at 2, plaintiff is an inadequate representative of the class provisionally certified in this case. The parties state also that neither counsel nor any named party to this action has been contacted by any potential member of the class in regards to this suit, that the attorneys for both parties know of no publicity which this suit has generated, and finally, that decertification of the class in this case will not unfairly prejudice putative class members. After careful consideration of the parties' motion in light of the relevant law, and the statistical data presented, the Court grants the parties' motion to decertify for the reasons set forth herein.

## Introduction

█ Rule 23(c)(1) of the Federal Rules of Civil Procedure, directs that: "[a]s soon as practicable after the commencement of a suit brought as a class action, the court shall determine by order whether it is to be so maintained." *See* B. Schlei & P. Grossman, *Employment Discrimination Law* 1125 & n. 79 (1976). In making this determination under Rule 23, the district court must decide whether the plaintiff has satisfied the four requirements of Rule 23(a), and whether the proposed class falls within one of the subsections of 23(b). Rule 23(a) provides that a class may be certified if: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." If the prerequisites set forth above have been met, the district court then directs its inquiry to the propriety of the maintenance of the class under one of the subsections of Rule 23(b). Unquestionably, the district court has a measure of discretion to determine whether an action should proceed as a class action. *Walker v. Jim Dandy Co.*, 638 F.2d 1330, 1334 (5th Cir. 1981); *Jones v.*

*Diamond*, 519 F.2d 1090 (5th Cir. 1975); *Wilcox v. Commerce Bank of Kansas City*, 474 F.2d 336, 344 (10th Cir. 1973); *Huff v. N. D. Cass Company of Alabama*, 468 F.2d 172 (5th Cir. 1972); *Johnson v. Georgia Highway Express, Inc.*, 417 F.2d 1122 (5th Cir. 1969). When the Court makes a determination of class status at an early stage in the proceeding, it should attempt to uphold class status. 7A C. Wright & A. Miller, FEDERAL PRACTICE & PROCEDURE § 1785, at 138 (1972).

█ Favorable class determinations by the court are not necessarily cast in stone. Conditional certification pending further amplification and discovery by the named plaintiff is an accepted judicial practice, especially in cases involving an allegedly continuing practice of racial discrimination. *See, e.g., Scott v. University of Delaware*, 68 F.R.D. 606, 608–09 (D.Del.1975); *McAdory v. Scientific Research Instruments, Inc.*, 355 F.Supp. 468, 472 n.2, 473 (D.Md.1973); *Tolbert v. Western Electric Co.*, 56 F.R.D. 108, 113–14 (N.D.Ga.1972). *See also* Newberg, *Class Actions* § 24206 (1977). "If the certification of the class is later deemed to be improvident, the court may decertify . . . subclassify . . . alter the classification, or permit intervention. . . ." *Eggleston v. Chicago Journeymen Plumbers*, 657 F.2d 890, 896 (7th Cir. 1981) (citations omitted), *cert. denied*, —— U.S. ——, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982). *See also Stastny v. Southern Bell Tel. & Tel. Co.*, 628 F.2d 267, 275–276 (4th Cir. 1980); *Jones v. Diamond, supra* at 1098 (5th Cir. 1975); *Wilcox v. Commerce Bank of Kansas City, supra* at 344. And by the very language of the rule, any order regarding the maintenance of the class action "may be conditional, and may be altered or amended before the decision on the merits." Fed.R.Civ.P. 23(c)(1). The Supplementary Notes of the Advisory Committee regarding Rule 23 amplifies this subdivision somewhat:

A determination once made can be altered or amended on the merits if, upon fuller development of the facts, the original determination appears unsound. A negative determination means that the

action should be stripped of its character as a class action. See subdivision (d)(4). Fed.R.Civ.P. 23(c)(1) advisory committee supplementary note. The court in *Lamphere v. Brown University*, 553 F.2d 714 (1st Cir. 1977), summarized well the duty of district courts in this regards:

> If, after all pre-trial activity has been completed, conference reveals that the complexity, length, and expense of trial would be substantially increased if the case were to continue with the class defined as it presently is, and if the court by that time has come to a clear view of the proper scope of the complaint, we think it would be well advised to review the evidence, possibly with the assistance of oral arguments and briefs, and redetermine whether the class certification should remain, should be altered, or should be stricken and the suit confined to plaintiff and other individuals whose intervention seems appropriate. Whatever the result, the parties would know that the court had done its best to fulfill its responsibilities in class action monitoring. And for purposes of review we would have a much better record of the factors influencing the court.

*Id.* at 720.

### Proof of Discrimination

In the case *sub judice*, the Court conditionally certified the class at a time when the paucity of information made it difficult to determine whether plaintiff's class allegations were sustainable. Nevertheless, based upon the information which had been uncovered through discovery conducted up to that time, the Court determined that the class should be provisionally certified. More than two years have now passed since the Court certified a class and the parties have since then conducted further discovery. Specifically, plaintiff filed and defendant answered one request for production of documents and two extensive sets of interrogatories, i.e., plaintiff's second and third sets of interrogatories. Plaintiff deposed also Dr. George Kadera, Dean of Personnel Services for defendant Houston Community College. Independent of the parties assertion that the discovery conducted in this case has not yielded any evidence that defendant has engaged in or is currently engaging in any class-wide discrimination, the Court has carefully perused the answers to plaintiff's interrogatories, the documents produced in response to plaintiff's request for production of documents, the depositions on file, and the exhibits attached to defendant Houston Community College's Memorandum in Support of the Agreed Motion to Decertify the Class.

■ Apparently, plaintiff's claims of class-wide discrimination are based on the theory that defendant's personnel policies have a disparate impact on the plaintiff class. Specifically, plaintiff asserts that "[d]efendant has engaged and is engaging in a pattern and practice of discrimination in employment against Black persons on account of their race." Plaintiff's Complaint at 3. As stated recently in *Pouncy v. Prudential Ins. Co. of America*, 668 F.2d 795 (5th Cir. 1982), however:

> The discriminatory impact model of proof in an employment discrimination case is not, however, the appropriate vehicle from which to launch a wide ranging attack on the cumulative effect of a company's employment practices. Nor may just any employment practice be challenged under this model simply because an uneven racial balance exists in an employer's work force. As originally conceived in *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 . . . the disparate impact theory applied to an 'overt, clearly identified nondiscretionary selection criteri[on] that [was] applied at a single point in a selection process.' D. Baldus & J. Cole, Statistical Proof of Discrimination § 1.23, at 12 (1981 Supp.). Although some courts have used the disparate impact model of proof to challenge multiple employment practices simultaneously, *see id.*, this is an incorrect use of the model. The disparate impact model applies only when an employer has instituted a specific procedure, usually a selection criterion for employ-

ment, that can be shown to have a causal connection to a class based imbalance in the work force.

*Id.* at 800. Upon reviewing carefully plaintiff's complaint and the class allegations contained therein, it is clearly evident that plaintiff contends broadly that defendant discriminated against Blacks in administrative and faculty positions by treating them differently from its White employees in those positions. Accordingly, as recognized by the appellate court in *Pouncy v. Prudential Ins. Co. of America, supra* at 800–02, the class allegation must be established through the disparate treatment standard of proof. Thus, proof of discriminatory motive is required. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n.15, 97 S.Ct. 1843, 1854 n.15, 52 L.Ed.2d 396 (1977); *Pouncy v. Prudential Ins. Co. of America, supra*, at 802; *Johnson v. Uncle Ben's , Inc.*, 657 F.2d 750, 752 (5th Cir. 1981); *Wilkins v. University of Houston*, 654 F.2d 388, 395 (5th Cir. 1981). In addition to proof of a discriminatory motive, plaintiff has " 'to prove more than the mere occurrence of isolated or 'accidental' or sporadic discriminatory acts. [She has] to establish by a preponderance of the evidence that racial discrimination was the [defendant college's] standard operating procedure—the regular rather than the usual practice.' " *Pouncy v. Prudential Ins. Co. of America, supra*, at 802, *citing International Brotherhood of Teamsters v. United States, supra*, 431 U.S. at 336, 97 S.Ct. at 1855.

Since the passage of the Civil Rights Act, courts have often relied on statistical evidence as proof of a violation. Indeed, "[i]n many cases the only available avenue of proof is the use of racial statistics to uncover clandestine and covert discrimination by the employer or union involved." *International Brotherhood of Teamsters v. United States, supra*, at 340 n.20, 97 S.Ct. at 1856 n.20 (citations omitted); *Fisher v. Proctor & Gamble Manufacturing Co.*, 613 F.2d 527 (5th Cir. 1980), *cert. denied*, 449 U.S. 1115, 101 S.Ct. 929, 66 L.Ed.2d 845 (1981). Statistics have considerable probative force because "absent explanation, it is ordinarily to be expected that nondiscriminatory hiring practices will in time result in a work force more or less representative of the racial and ethnic composition of the population in the community from which the employees are hired." *Hazelwood School District v. United States*, 433 U.S. 299, 307, 97 S.Ct. 2736, 2741, 53 L.Ed.2d 768 (1977) *quoting International Brotherhood of Teamsters v. United States, supra.* *See also Castaneda v. Partida*, 430 U.S. 482, 496–97 n.17, 97 S.Ct. 1272, 1281 n.17, 51 L.Ed.2d 498 (1977); *Swint v. Pullman-Standard*, 624 F.2d 525, 529 (5th Cir. 1980). Thus, the Supreme Court has held that strong statistical proof may be sufficient to establish a *prima facie* case in employment discrimination cases. *See Hazelwood School District v. United States, supra;* *Turner v. Fouche*, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970). *See also Fisher v. Proctor & Gamble Manufacturing Co. supra* at 544; *Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211, 225 & n.34 (5th Cir. 1974). As aptly stated by the Fifth Circuit in *Pouncy v. Prudential Ins. Co. of America, supra*, at 802:

Statistical evidence is also of central importance in a disparate treatment case. It may be used to show both motive and a pattern or practice of racial discrimination. In a proper case, we may infer racial discrimination if gross statistical disparities in the composition of an employer's work force can be shown. *Id.* [431 U.S.] at 335 n.15, 97 S.Ct. at 1854 n.15. When 'the statistical showing is sufficiently strong in a disparate treatment action, [the] plaintiffs' prima facie case can be made without additional evidence establishing that [the] defendant purposefully treated minorities protected under Title VII less favorably than other persons.' *Wilkins*, 654 F.2d at 395.

While the Supreme Court has not ruled definitely on just what threshold mathematical showing of variance along racial lines suffices as to establish a discriminatory disparity, two approaches frequently have been employed: tests of "statistical significance" and the "80 percent rule".

Briefly stated, the first approach refers to concepts developed in the field of statistics wherein the goal is to determine whether any differences in success between racial groups of employees exists, and if so, whether the differences are of a statistically significant magnitude. In *Castaneda v. Partida, supra,* the Court recognized that the hypothesis that race plays no role is "suspect" when the difference between the observed number of decisions favoring minorities and the expected number of decisions favoring minorities exceeds "two or three standard deviations". *Id.,* 430 U.S. at 496–497 n.17, 97 S.Ct. 1281 n.17. *See also Hazelwood School District v. United States, supra,* 433 U.S. at 308–09 n.14, 97 S.Ct. at 2741–42 n.14.

The "80 percent rule", adopted by the EEOC and incorporated in the Uniform Guidelines on Employee Selection Procedures, 42 Fed.Reg. 65542 (1977), as corrected in 43 Fed.Reg. 1506 (1978), is a somewhat easier concept to apply. Under the rule, a claim that Blacks are promoted in insufficient numbers would fail if the selection rate for Blacks, the ratio of the number of Blacks promoted to the number of Blacks in the relevant pool, exceed 80 percent of the selection rate for Whites in the same pool. Although the Fifth Circuit has not ruled on the propriety of the rule's use in employment discrimination cases, it has recognized its use. *Moore v. Southwestern Bell Telephone Co.,* 593 F.2d 607, 608 (5th Cir. 1979) (per curiam).

■ Although both the "statistical significance" test and the "80 percent rule" have been used in employment discrimination litigation, the Court concludes that the preferable approach in the instant cause is a common sense evaluation of the facts of the case. Accordingly, the Court recognizes that a *prima facie* case of disparate treatment may be established if gross statistical disparities in the composition of the defendant's work force can be shown.

The evidence discovered in this case indicates that during the relevant time period there has been no disparity between the percentage of Blacks in administrative and faculty positions and the percentage of Blacks in the work force. The statistical data provided by defendant in its answers to plaintiff's third set of interrogatories indicates that during the school year from 1975 to 1980, defendant employed the following number of Blacks as administrators or members of the faculty:

| Administrators | Faculty |
|---|---|
| 1975–1976 | 1975–1976 |
| Blacks – 11 | Blacks – 32 |
| Whites – 34 | Whites – 75 |
| 1976–1977 | 1976–1977 |
| Blacks – 12 | Blacks – 42 |
| Whites – 38 | Whites – 112 |
| 1977–1978 | 1977–1978 |
| Blacks – 13 | Blacks – 51 |
| Whites – 49 | Whites – 136 |
| 1978–1979 | 1978–1979 |
| Blacks – 13 | Blacks – 70 |
| Whites – 50 | Whites – 155 |
| 1979–1980 | 1979–1980 |
| Blacks – 12 | Blacks – 66 |
| Whites – 54 | Whites – 150 |

In proportion to the number of Whites employed by defendant in administrative and faculty positions, the following percentages of Blacks were employed:

| Administrators | Faculty |
|---|---|
| 1975–1976 | 1975–1976 |
| 24.44% | 30.48% |
| 1976–1977 | 1976–1977 |
| 24.00% | 27.27% |
| 1977–1978 | 1977–1978 |
| 20.97% | 27.27% |
| 1978–1979 | 1978–1979 |
| 20.63% | 31.11% |
| 1979–1980 | 1979–1980 |
| 18.18% | 30.55% |

Additional statistical evidence prepared by the Texas Employment Commission, Houston District, and submitted by defendant indicates that from September, 1978 through December, 1980, Blacks constituted approximately 18.4% of the labor force in the Greater Houston Metropolitan area.[1]

---

1. The Greater Houston Metropolitan area referred to here is comprised of the following counties: Brazoria, Fort Bend, Harris, Liberty, Montgomery, and Waller.

*See* Defendant, Houston Community College's Memorandum in Support of the Agreed Motion to Decertify the Class, Exhibits A–C. Accordingly, a comparison of the percentage of Blacks employed by defendant in administrative and faculty positions with the percentage of Blacks in the labor force in the Greater Houston Metropolitan area reveals no disparity whatsoever in the school years from 1978 through 1980. Indeed, it is readily apparent that with the exception of Blacks employed in administrative positions in the 1979 to 1980 school year, defendant employed a greater percentage of Blacks in administrative and faculty positions during those years than their percentage of representation in the labor force.

■ As to whether a significant disparity or any other type of disparity exists during the school years from 1975 to 1978, the Court has not been presented with sufficient information to make such a determination. Specifically, the Court does not have any statistical data regarding the percentage of Blacks in the labor force during those years. However, because of the high percentage of Blacks employed by defendant in administrative and faculty positions from 1975 to 1978, a percentage higher than the percentage of Blacks in the labor force from 1978–1980, the Court can reasonably infer that a disparity does not exist. Accordingly, due to the lack of evidence to support plaintiff's class allegations and the fact that from 1975–1980 defendant employed almost an equal if not greater percentage of Blacks in administrative and faculty positions than the percentage of Blacks in the Houston work force, the Court concludes that the class previously certified should not be maintained and should be decertified.

### Adequacy of Representation

■ It is axiomatic that in order to pursue an action on behalf of a class, the purported "representative must be part of the class and 'possess the same injury' as the class members," *East Texas Motor Freight v. Rodriguez,* 431 U.S. 395, 403, 97

S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977); *Walker v. Jim Dandy Co., supra* at 1335, and where the named plaintiff or representative is not an adequate representative, a class action should not be certified. Fed.R. Civ.P. 23(a). It is well settled further than even after certification, the district court has a duty to continually "scrutinize the adequacy of representation and withdraw certification if sufficient representation is not furnished." *DeGrace v. Rumsfeld,* 614 F.2d 796, 808–811 (1st Cir. 1980); *Grigsby v. North Mississippi Medical Center, Inc.,* 586 F.2d 457, 462 (5th Cir. 1978); *Guerine v. J & W Inv., Inc.,* 544 F.2d 863, 864 (5th Cir. 1977); *Gonzales v. Cassidy,* 474 F.2d 67, 75 n.15 (5th Cir. 1973); *Eisen v. Carlisle and Jacquelin,* 391 F.2d 555, 562 (2d Cir. 1968). *See also United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 407, 100 S.Ct. 1202, 1214, 63 L.Ed.2d 479 (1980); *Ford v. United States Steel Corp.,* 638 F.2d 753, 761–62 (5th Cir. 1981); *Satterwhite v. City of Greenville,* 634 F.2d 231 (5th Cir. 1981) (en banc); *Armour v. City of Anniston,* 622 F.2d 1226 (5th Cir. 1980). *Cf. East Texas Motor Freight v. Rodriguez, supra,* 431 U.S. at 406 n.12, 97 S.Ct. at 1898 n.12. The Court can also appoint a class representative, although not originally a named plaintiff, as long as the representative which the Court appoints satisfies Rule 23(a)(4). This is so because once certified, a class acquires an independent legal status separate from its named representative and the interests the representative asserts. *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975).

As stated earlier, the parties urge the Court to decertify the conditionally certified class on the additional ground that plaintiff is an inadequate class representative. In support of their contention, the parties assert that because of plaintiff's long absence from defendant college, plaintiff lacks "knowledge and familiarity with the College's policies, and procedure, and personnel." Agreed Motion to Decertify the Class at 2. Such a ground has been utilized in other cases to support a finding that a class representative is inadequate, and, accordingly, the class should not be certified, or if already certified, the class

should be decertified. *Strong v. Arkansas Blue Cross and Blue Shield, Inc.*, 87 F.R.D. 496, 509–10 (E.D.Ark.1980), and the cases cited therein. *See also Bradley v. Southern Pacific Co., Inc.*, 486 F.2d 516 (5th Cir. 1973). In further support of their contention that plaintiff is an inadequate representative, the parties assert that it is apparent from plaintiff's deposition, that her complaints are highly individualized. This ground has also been recognized by courts to have merit. *See, e.g., Patterson v. General Motors Corp.*, 631 F.2d 476, 481 (7th Cir. 1980) ("We agree with the finding by the lower court that because plaintiff's grievances are so personalized, there is a serious claim question as to whether he could fairly and adequately protect the interests of the class."), *cert. denied*, 451 U.S. 914, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1981); *Martinez v. Bethlehem Steel Corp.*, 78 F.R.D. 125, 128 (E.D.Penn.1978).

■ Applying the aforementioned principles to the case *sub judice*, the Court concludes that plaintiff is an inadequate representative of the plaintiff class. As demonstrated by plaintiff's deposition, plaintiff's claims are highly individualized, and consequently, do not satisfy the commonality and representation requirements of Rule 23(a). Moreover, plaintiff's long absence from defendant has resulted in her lack of knowledge and unfamiliarity with defendant's policies, procedures, and personnel. However, the Court is unable to decertify the class on the basis of this conclusion alone. As stated earlier in this Order, a class once certified has a legal status of its own and if an adequate representative can be found, the Court will maintain the class nature of the suit. The Court will not follow this procedure in the instant cause, however, as the Court has already concluded that on the basis of the statistical evidence presented, the defendant has not since 1975 and does not presently engage in the class-wide discrimination practices alleged in the plaintiff's complaint. Accordingly, it would be fruitless to appoint a representative of the class and require this case to go to trial on the class claims being alleged.

■ The Court having decided that the class nature of this action cannot and should not be maintained, the question of whether the putative class members should be given notice of the decertification remains. Counsel for both parties state that they are unaware of any individual relying upon this action. Neither counsel have been contacted by any putative class member with regards to this suit. Nor were members of the class given notice of the provisional certification. Such notice, although required in a class action certified pursuant to rule 23(b)(3), is not mandatory in a 23(b)(1) and (b)(2) class. *Grigsby v. North Mississippi Medical Center, Inc.*, *supra*, at 461. Accordingly, based upon the representation of counsel and the readily apparent fact that no putative member of the class has contacted this Court regarding this suit, the Court concludes that notice to members of the class previously certified is not required under the circumstances.

*Conclusion*

After careful consideration of all the aforementioned data, the Court is unable to conclude that defendant is currently engaging in class-wide discrimination, or engaged in class-wide discrimination during the relevant time periods of this lawsuit.[2] To pursue this suit as a class action in light of the aforementioned evidence would serve no end and would simply burden the representative which the Court would have to appoint, and cause an unnecessary expenditure of precious judicial resources. Accordingly, the Court grants the parties' motion to decertify and orders that the class previously certified be decertified.

---

2. The Court's conclusion is limited solely to the disposition of the motion to certify and is based on the Court's consideration of that evidence presented to it.