[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION REGARDING CLASS CERTIFICATION
This is a purported class action brought by former patients who received treatment at the defendant Veterans Memorial Medical Center (the "Hospital"). The Second Amended Complaint of April 17, 1998 contains eleven counts, including a count for abuse of process, violation of the Connecticut Unfair Trade Practices Act, Connecticut General Statutes § 42-110a et seq. (CUTPA), intentional infliction of emotional distress, violation of worker's compensation regulations and statutes, breach of covenant of good faith and fair dealing and other claims. By Memorandum of Decision dated June 2, 1998 this court, Levine, J. certified the class.
Discovery in the case is not yet completed. The pleadings are not closed, there is no trial date assigned, and no class notice has been filed. During the course of a discovery conference with counsel concerning the identity of members of the purported class, the court became concerned that the class may have been improvidently certified.
Even after class certification, the court retains a duty to monitor continually whether the requirements of certification remain satisfied.See e.g., Richardson v. Byrd, 709 F.2d 1016, 1019 (5th Cir. 1983) (the court ". . . is charged with the duty of monitoring its class decisions in light of the evidentiary development of the case"). If the facts and evidence revealed and developed pre-trial no longer support the maintenance of a class action, this court must decertify the case. SeeMarr v. WMX Technologies, Inc., No. 960071542, 1996 WL 694634, *9 (Conn.Super. 1996) (". . . certification may be vacated as the case progresses toward resolution on the merits . . .); Sessum v. Houston CommunityCollege, 94 F.R.D. 316, 318 (D.Tex. June 7, 1982).
Based on the foregoing another hearing took place on December 7 and 8, 2000 and January 3, 2001 to determine whether or not to decertify the class which is defined as follows:
 All persons with accepted workers' compensation claims, as that term is defined in the worker's compensation statutes and relevant caselaw, against whom the hospital brought suit for unpaid medical CT Page 11017 bills incurred in the treatment of work related injuries or diseases at a time when the hospital knew or should have known of the existence of the accepted workers' compensation claim.[1]
Legal Framework
Connecticut General Statutes § 31-294d provides that "[a]ll disputes concerning liability for hospital services in workers' compensation cases shall be settled by the commissioner in accordance with this chapter." Connecticut State Regulation 31-279-9 (e) provides that "[a]ll charges for medical, surgical, hospital and nursing services [rendered in an accepted worker's compensation case], except those for expert testimony, shall be solely the responsibility of the employer or carrier, and no claim will be made against the injured employee for all or part of a fee."
Based on the foregoing it is clear that a medical provider cannot sue an employee to recover its fees rendered in an accepted workers' compensation case, but, instead must recover from the employer, or the employer's worker's compensation insurance carrier. If the employer or the insurance carrier does not pay voluntarily, then the medical provider must seek payment through the Worker's Compensation Commissioner and not through the courts.
Many patients who report that their medical condition is work-related do not have an accepted worker's compensation case. A problem which medical providers such as the defendant Hospital often encounter in the worker's compensation context is an inability to determine whether a patient who reports that his injury is work related actually has an accepted worker's compensation case. If the patient does not, then the provider can sue the patient to recover its fees.
At the hearing on this matter Jesse Frankl, a Workers' Compensation Commissioner, testified that sometimes people go to a hospital for treatment and tell the hospital, incorrectly, that their medical problem is work related so that they don't have to pay any deductible under their group health insurance coverage. In addition, some people may tell the health care provider that their medical problem is work related, but may chose not to report it to their employer. Such people would not have an accepted worker's compensation claim and could be sued by the medical provider for payment. Figueroa v. C and S Ball Bearing, 237 Conn. 1, 9,675 A.2d 845 (1996).
John Mastropietro, Chairman of Workers' Compensation Commission, testified that there are three ways in which a worker's compensation case CT Page 11018 becomes an "accepted case:" 1) The employee files a notice of claim, known as a Form 30C, and the employer makes payments pursuant to the claim; 2) The employer and the employee enter into a Voluntary Agreement whereby the employer acknowledges that the employee's injuries or disease is related to her employment; or 3)In the absence of a Form C or Voluntary Agreement, the employer or its insurer pays the employee's medical bills without reservation.
Chairman Mastropietro further testified that every year approximately 40, 000 accepted claims exist as to which the Commission has no record because the employer or its insurer has payed medical bills without filing anything with the Worker's Compensation Commission. This creates a big problem for a medical provider seeking payment because unless it receives independent information supplied by the employee/patient about the existence of an accepted worker's compensation case, it has no ability to discover for itself whether there is such a case, and often no recourse but to bring suit against the employee for payment.
Both Commissioner Frankl and Commissioner Mastropietro testified that as between the hospital and the patient, it is the patient who has the duty to provide the hospital with sufficient information concerning the worker's compensation case to enable the hospital to obtain payment from the employer. If the employee/patient fails to provide such information and the hospital cannot otherwise determine whether an accepted worker's compensation case exists, then even if the case exists but is not on record with the Worker's Compensation Commission, the employee runs the risk of being personally sued by the hospital. See Figueroa v. C and SBall Bearing, 237 Conn. 1, 9, 675 A.2d 845 (1996) ("If an employee decides not to utilize the act, however, he exposes himself to liability for the services performed by a medical provider. A medical provider, however, does not have standing to invoke the jurisdiction of the commission by giving notice on behalf of the employee or by independently filing a claim). Such a suit brought by the hospital would not violate the worker's compensation statutes or any other statutory or common law. It would be a suit brought by the hospital when it did not know or should not have known about the accepted worker's compensation case. In their dealings with the Hospital prior to the commencement of this action and in commencing this action, the plaintiffs appeared to be unaware that they had a duty to provide information to the Hospital.
As is evident below, when or whether the Hospital became aware of the existence of an accepted worker's compensation case with respect to each plaintiff varies with each plaintiff, and must be proved by the plaintiffs separately as to each plaintiff before a plaintiff can be deemed to be a part of the class. CT Page 11019
Discussion of Law and Ruling
Certification of a class action in state court is governed by Practice Book Sections 9-7 and 9-8. Arduini v. Auto Ins. Co. of Hartford,
Connecticut, 23 Conn. App. 585, 588-89, 583 A.2d 152 (1990).
 One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
Connecticut Practice Book Section 9-7. "The four requisites specified in Practice Book Section 87 [now 9-7] and rule 23 are usually identified by the shorthand names of numerosity, commonality, typicality and adequacy."Walsh v. National Safety Associates, Inc. 44 Conn. Sup. 569, 583,695 A.2d 1095 (1996), aff'd, 241 Conn. 278 (1997).
"An action may be maintained as a class action if the prerequisites of Section 9-7 are satisfied and the judicial authority finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Connecticut Practice Book Section 9-8; see also, Conn. Gen. Stats. Section 52-105.
The rule governing class actions is a procedural rule, not a matter of substantive law. This basic underlying principle is important, because whether a class action is proper does not depend on the merits of the litigation. Marr v. WMX Technologies, Inc., 244 Conn. 676, 680,711 A.2d 700 (1998). "Before a class can be certified all the prerequisites to a class action set out in Practice Book 87 [now known as Section 9-7] must be met." Arduini v. Auto Ins. Co. of Hartford, Conn.,supra at 588. "The plaintiff bears the heavy burden of establishing that each requirement of the rule is met." (emphasis added) Id. at 589; seealso, Walsh v. National Safety Associates, Inc. 44 Conn. Sup. 569,570-571, 195 A.2d 1095 (1996), aff'd, 241 Conn. 278 (1997). "Although, a trial court must undertake a rigorous analysis to determine whether the plaintiff has borne this burden successfully, it has broad discretion in determining whether a suit should proceed as a class action." (internal citations omitted) Arduini, supra at 589. "When the propriety of a class action is considered, the question is only whether the requirements set CT Page 11020 forth in the rules have been met and not whether the moving party has stated a cause of action or will prevail in the end. On the other hand, to decide whether [both] Practice Book Sections 87 and 88 [now 9-7 and9-8] have been satisfied, it is necessary to examine the substantive claims and defenses asserted." (internal citations omitted) Walsh v.National Safety Associates, Inc. 44 Conn. Sup. 569, 580-581, 195 A.2d 1095
(1996), aff'd, 241 Conn. 278 (1997).
After hearing the court finds the following relevant facts. During the time pertinent to this action, the years from 1990 to 1997, the Hospital coded a bill as worker's compensation-related based on the patient's statement that the injury or disease for which she sought treatment was work related. Many patients, including all of the named plaintiffs, did not provide the Hospital complete information regarding the workers' compensation matter, even when they were represented by an attorney and the attorney knew that the Hospital was attempting to obtain payment of its bill.
In cases where a patient claimed that his employer was responsible for a bill, the Hospital would bill the employer identified by the patient, and send a copy of this bill to the patient for their information. If the Hospital received no response from the employer, then the Hospital would send a certified mail request for payment to the employer. Many patients, including all of the named plaintiffs, failed to provide the Hospital with the name of the employer's worker's compensation insurance carrier, the claim number, or any information which would put the Hospital on notice that the patient did, indeed, have an "accepted" worker's compensation case. Often the patient, including at least one of the named plaintiffs, Mr. Elkins, provided the Hospital with the name of the incorrect employer. Letters from the Hospital to such employers produced the response that the employer had no record of the worker's compensation claim. Sometimes the patient, including at least one of the named plaintiffs, Daniel Rivera, gave the Hospital the name of an employer who was no longer in business. Sometimes the employer did not pay the Hospital's bill because the employer contested that there was a work-related injury. When the Hospital collection staff was unsuccessful in obtaining payment from the employer or the employer's worker's compensation insurance carrier, then it would turn the claim over to its lawyers. Brown Welsh.[2]
The named plaintiff, Thomas Ludemann, was treated on two occasions at the Hospital, on 6/8/92 and 6/10/92. He alleged that treatment on 6/8/92 was related to a work injury of 9/9/91. Mr. Ludemann provided the defendant with information regarding his employer but no information regarding the insurance company or claim number. A partial payment was received by the Hospital for the 6/10/92 services, but there was no CT Page 11021 indication why a partial payment was made. The matter was referred to Brown Welsh for pursuit of the outstanding bill in February of 1993. A voluntary agreement evidencing the existence of an accepted workers' compensation claim was not approved until 10/15/93. There was no evidencethat this Voluntary Agreement was ever provided to the Hospital or Brown Welsh at any time prior to the time when the Hospital commenced a small claims action against Mr. Ludemann. After numerous efforts on behalf of the defendant to obtain additional information to invoke the jurisdiction of the Workers' Compensation Commission, to no avail, a small claims writ was filed on 9/13/96, four years after the dates of service. Mr. Ludemann was aware that the defendant's bill was not paid at the time the writ was filed, yet the only action he took as a result of this knowledge was to notify his attorney. However, at no time prior to the commencement of suit did his attorney ever provide the Hospital with the Voluntary Agreement, or with any other information that would have enabled the Hospital to get paid. Obviously, had he done so, then the Hospital would not have needed to resort to suit against Mr. Ludemann. Eventually, after the writ was filed, Brown Welsh finally learned that there was an issue regarding causation and particularly a question by the insurer as to whether or not the Hospital's bills related to the work injury. Once this was learned, Brown Welsh requested an extension of time with the Small Claims court and pursued a Workers' Compensation hearing. However, judgment entered in the Small Claims case by the court's own action at a time when Brown Welsh was not pursuing the matter and had in fact agreed to continue the small claims action pending the Workers' Compensation hearing. Brown Welsh moved to reopen the judgment immediately after it was entered. Ultimately, the insurance company paid the bill without prejudice, only after judgment entered. The small claims matter was withdrawn.
The plaintiffs presented no evidence that the Hospital commenced suit against Mr. Ludemann at a time when the Hospital knew that he had an accepted worker's compensation case. To the contrary, the evidence was that for four years the Hospital and its attorneys attempted unsuccessfully to determine whether such a case existed before commencing suit.
Issues relevant to Margaret Dorsey's claims are as follows. Mrs. Dorsey, too, received treatment at the hospital and claimed the treatment was work related. However, unlike Mr. Ludemann, she provided the hospital with information regarding two dates of injury, one in 1984 and one in 1987, and two third party payers, the Second Injury Fund and CIGNA. Mrs. Dorsey did not specify to which injury the treatment related, and the Hospital pursued payment with the employer. Mrs. Dorsey received treatment at the hospital on 5/12/93 for an injury that occurred a minimum of 6 years earlier, prior to the institution of computer records CT Page 11022 at the Commission. On the Workers' Compensation Questionnaire form that Mrs. Dorsey completed at the hospital, she indicated her date of injury was 9/84. Even at the time of her testimony, Mrs. Dorsey could not clarify whether the bill for services at the defendant hospital was due to the injury in 1984 or 1987. After waiting nearly four years for payment, the Hospital commenced a small claims action against Mrs. Dorsey in April of 1997. Payment was received from the insurance company only after suit was filed.
Although Mrs. Dorsey had entered into a Voluntary Agreement with her employer concerning the 1987 injury in 1989, there was no evidence that that Agreement was provided to the Hospital or its attorneys at any timeprior to the time that the Hospital commenced suit against Mrs. Dorsey. As with the other named plaintiffs, there was no evidence that the Hospital knew that Mrs. Dorsey had an accepted worker's compensation case prior to the time it commenced suit.
Named plaintiff Daniel Rivera reported to the defendant hospital for treatment on 12/26/96 claiming that workers' compensation would cover the related bill. At that time, he advised the Emergency Department personnel that he had complaints of back pain for three months with no relief from medication; he also noted that he had had a work injury in 1993. In fact, Mr. Rivera's work-related injury occurred on April 6 of 1992, not in 1993 as he stated to the defendant. Mr. Rivera had provided the defendant with no information regarding insurance but did provide his employer information. When the Hospital attempted to bill his employer it first learned that the employer had gone out of business prior to the time when Mr. Rivera had been treated. Mr. Rivera confirmed that he himself made no request for a Workers' Compensation hearing to address the bill from the Hospital. A small claims action was filed and judgment entered against Mr. Rivera one day before the answer was received by the small claims court. As with the other named plaintiffs, there was no evidence that the hospital knew that there was any accepted worker's compensation case for Mr. Rivera before it brought suit against him.
Plaintiff Jesus Ruiz received treatment on two relevant occasions with the defendant, on 1/6/97 and 6/3/97. On 6/3/97 Mr. Ruiz did not claim that his injury was covered by Workers' Compensation. Sometime after the services were provided, the Hospital received a completed Workers' Compensation Questionnaire form from Mr. Ruiz for the 6/3/97 treatment. On that Questionnaire Mr. Ruiz indicated that his employer was ThermoSpas in Wallingford, and the Hospital billed the employer for both dates of service. ThermoSpas never paid the bills or otherwise responded to the Hospital. Mr. Ruiz failed to provide the Hospital with any information which would indicate that he had an accepted worker's compensation case. CT Page 11023
Patrick Mullaney, another of the seven named plaintiffs, was treated at the Hospital on 6/19/95. He claimed that treatment was related to a work injury and also completed a Workers' Compensation Questionnaire form wherein he indicated that his employer was a Meriden construction company, though he provided no insurance information. The Hospital billed the employer after which a partial payment by the insurance carrier, made without prejudice, was received. The remaining balance was turned over to Brown Welsh by the hospital on 9/11/95, and Brown Welsh pursued payment. Brown Welsh made a demand for payment with the workers' compensation insurance company, yet the insurance company refused to pay the balance due. Brown Welsh made a request for a workers' compensation hearing that was refused as the Commission advised there was no claimpending. Brown Welsh then sent a claim packet to the patient; the packet included a Form 30C for notice of claim. Thereafter, Brown Welsh again checked with the Commission to determine if a claim had been filed and found that it had not. Suit was filed against the patient in December of 1997, over two years after the service date. After receipt of the small claims answer, Attorney Lowry, of Brown Welsh, wrote to Attorney Mahon, who represented the patient at the time, and who represents the plaintiffs in this action, and asked for additional information so that Brown Welsh could invoke the jurisdiction of the Workers' Compensation Commission, and, thereby, obtain payment for its client, the Hospital. Notwithstanding that it was the duty of his client, Mr. Mullaney, to provide the Hospital with sufficient information to enable the Hospital to pursue payment through worker's compensation, even after receiving this letter, Attorney Mahon did not provide Attorney Lowry with any such information. Thus, while the Hospital knew that Mr. Mullaney claimed that his injury was work-related, there was, again, no evidence that the Hospital knew of the existence of an accepted worker's compensation case for Mr. Mullaney at the time it brought suit against him.
Richard Smeriglio was treated at the Hospital on 1/13/97. Though he claimed treatment was work related, he failed to provide any insurance information. The employer was billed, yet no payment was received, nor was insurance information received. There was no evidence presented that Mr. Smeriglio in fact did have an accepted worker's compensation case.
Bradley Elkins, one of the seven named plaintiffs, received treatment at the defendant Hospital on 1/4/93 and on 6/3/94. Mr. Elkins incorrectly advised the Hospital that his employer was Ruth Chris Steakhouse. In reality, his employer at the time of his worker's compensation injury was Times Fiber. He never provided the Hospital with insurance information. While he claimed that his treatment at the Hospital was work-related, he knew the Hospital initially billed Blue Cross, his group carrier, and apparently took no steps to provide the Hospital with accurate information related to his worker's compensation claim. Based on the information CT Page 11024 provided by Mr. Elkins, the Hospital billed the employer, Ruth Chris.
When Mr. Elkins was asked whether he realized that the Hospital was not aware of the identity of the employer responsible on his worker's compensation case until 1997, his response was that that was "not his fault." Mr. Elkins admitted that he took no action to attempt to help the Hospital obtain payment for his medical bills. Mr. Elkins was represented by Attorney Mahon. In August of 1997 when Attorney Mahon learned that the Hospital had not been paid for medical treatment rendered to Mr. Elkins after waiting four years, he offered no information that would help the Hospital obtain payment. Instead, he wrote to Attorney Lowry stating only that the bill should be paid by worker's compensation and Times Fiber was the employer. At this point Attorney Lowry already had this information, but still had no knowledge that Mr. Elkins had an accepted worker'scompensation case. This probably was because Mr. Lowry was looking for information about the matter in the Eighth Workers' Compensation District. Attorney Mahon had requested that the matter be transferred to the Third District, which Brown Welsh could not have known, but he never advised Attorney Lowry or the Hospital of that fact, not did he provide Attorney Lowry or the Hospital with any claim information, insurance information or date of injury. Without any information from Attorney Mahon which would have given the Hospital actual knowledge that Mr. Elkins had an accepted worker's compensation case, the Hospital could not seek payment before the Worker's Compensation Commission and was left to pursue Times Fiber for payment. Brown Welsh pursued payment from Times Fiber, and Times Fiber denied that Mr. Elkins was an employee and stated that it had no record of a claim for Mr. Elkins. The Hospital sued Mr. Elkins in small claims court only after it had attempted to obtain payment through worker's compensation for years. Even after he was sued, the answer filed on his behalf by his attorney did not provide enough information to prove the existence of a pending workers' compensation claim and invoke the jurisdiction of the Commission. Thus, as with the other plaintiffs, there was no evidence introduced that the Hospital or its counsel knew about the existence of an accepted worker's compensation case before it sued Mr. Elkins.
The plaintiffs presented evidence with respect to Cerise Evans, who is not a named plaintiff, but who is allegedly a member of the class. Ms. Evans was allegedly injured in 1990, and received treatment from 3/9/90 to 3/30/90. Given that Ms. Evans claimed the treatment was related to a work injury, the hospital billed her stated employer. The unpaid bill for services was referred by the defendant to Brown Welsh in July of 1993. The address provided by Ms. Evans for herself was not found to be her address and searches did not reveal her correct address. Brown Welsh's request for a hearing was denied by the Workers' Compensation Commission. A small claims writ was filed on 3/20/97, some seven yearsCT Page 11025after services had been rendered, and a default judgment entered against her. Ms. Evans failed to present any evidence to prove the existence of an accepted workers' compensation case at the time. of her treatment at the Hospital.
There was clearly no evidence that the Hospital actually knew about the existence of an accepted worker's compensation case for any of the named plaintiffs or Cerise Evans at the time it brought suit against them. However, the definition of the class includes cases in which the Hospital should have known about the existence of such cases. Had there been evidence that the Hospital and/or its attorneys had failed to take any action to ascertain the existence of an accepted worker's compensation case, then perhaps an inference could arise that the Hospital "should have known" that there was an accepted case. However, such inference might not be properly drawn in light of the testimony by both Worker's Compensation Commissioners who testified that the patient had a duty to provide the Hospital with worker's compensation information.
Even though the patients had a duty to provide the Hospital with information about their worker's compensation cases, the Hospital made significant efforts to gather that information itself so that it could obtain payment. There was substantial evidence concerning the lengths to which the Hospital and Brown Welsh went to attempt to ascertain whether its remedy was before the Worker's Compensation Commission or the Courts.
Commissioner Frankl testified that Brown Welsh presented 670 and 700 files (all of which presumably involved patients with "work-related" ailments) to the Chairman's office in an effort to obtain hearings so the Hospital could determine whether the patients involved had accepted worker's compensation cases. Commissioner Frankl explained that the Workers' Compensation Commission refused to hold hearings in those cases. Attorney Houston Putnam Lowry, of Brown Welsh, testified that his office had requested hearings on cases on a rolling basis, that the Commission stopped scheduling hearings, and that his office at one point had requested hearings on approximately 900 cases in various district offices. Brown Welsh filed an appeal related to these cases, and the matter was certified by the Supreme Court as the case of Figueroa v. Cand S Ball Bearing, 237 Conn. 1, 675 A.2d 845 (1996).
In Figueroa, the Connecticut Supreme Court held that a medical provider could not obtain a Workers' Compensation hearing unless there was a claim before the Workers' Compensation Commission. 237 Conn. at 9. The Court further held that a medical provider could not assert the claim before the Commission. Id. Asserting such a the claim was held to be exclusively the injured employee's responsibility and privilege. Id. Figueroa made CT Page 11026 clear that a medical provider had to provide enough information to the Commission to identify a file in order for a hearing to be held and that if a file was not found to exist by the Commission, no hearing would be held at the medical provider's request. See Figueroa v. C and S BallBearing, 237 Conn. 1 (1996).
After Figueroa, it was clear that a medical provider who lacked sufficient information about the patient's worker's compensation case to permit the Commission to assert its jurisdiction could not obtain a hearing before the Commission and the provider would be without recourse under the worker's compensation statutes. The cases that comprised theFigueroa case, which numbered between 670 and 700, were cases in which the Hospital lacked actual knowledge of the existence of an accepted worker's compensation claim and lacked the ability to obtain such knowledge by means of a hearing before the Commission. Brown Welsh also attempted to obtain information from the Worker's Compensation Commission offices. The New Haven Worker's Compensation Commission office took the position that all information about whether or not there was an accepted case concerning a particular patient was privileged. Brown Welsh ultimately filed a Freedom of Information Complaint in order to be able to look at those files.
By 1993 the Worker's Compensation Commission files were computerized. Brown Welsh attempted to obtain access to the Commission computers, but that access was denied to them. After Figueroa, Brown Welsh wrote letters to the Worker's Compensation offices and also sent people personally to look for information in the offices.
Moreover, there was significant evidence concerning the procedure of the Hospital and its lawyers in pursuing payments on cases in which the patient claimed their injury was work related. There was absolutely no evidence that the Hospital's procedure was to initially sue such a patient. Quite to the contrary, the Hospital went to extraordinary lengths to avoid violating the worker's compensation bar against suing patients with accepted worker's compensation claims. Those lengths included bringing an action, Figueroa, all the way to the Connecticut Supreme Court.
The court finds that when a patient alleged workers' compensation involvement, the Hospital and its counsel made good faith efforts to recover payment from the employer or insurer, requested hearings before the Commission, and requested information from the Commission. If Brown 
Welsh learned that a patient was represented by an attorney, they attempted to obtain information from the attorney. If the Hospital learned of an accepted workers' compensation claim after suit was filed, the suit was not pursued, pending a Workers' Compensation Commission CT Page 11027 decision, as in the Ludemann and Elkins cases.
Numerosity
"Failure to satisfy the numerosity requirement is sufficient ground for denying class certification." Arduini v. Auto Ins. Co. of Hartford, supra at 590. If the plaintiffs fail to satisfy the numerosity requirement of a class action, the trial court should deny the plaintiffs' Motion for Certification. "There is no magic number that automatically fulfills the numerosity requirement of the rule." (Internal quotations and citations omitted.) Id. Connecticut courts have not specified a number that is sufficient to certify a class. However, Connecticut courts have found six, ten or eleven similarly situated persons to be too small for certification as a class. See Arduini v. Auto Ins. Co. of Hartford,Conn., supra; and Hasmig Mahakian, et al v. David Kalamian,13 Conn. Sup. 327 (1945). The Appellate Court has found that the numerosity requirement was not met where 10 or 11 potential class members were identified, and discovery of one or more additional potential class members was inadequate. See Arduini, supra.
"The plaintiff must show some evidence or a reasonable estimate of the number of class members." Walsh v. National Safety Associates, Inc.,
supra at 583, citing to Campbell v. New Milford Board of Education,36 Conn. Sup. 357, 423 A.2d 900 (1980). In the instant matter, the plaintiffs have failed to provide any evidence that there is anyone within the class. The plaintiffs proved that some of the named plaintiffs had accepted worker's compensation cases. But such proof alone was not sufficient to bring the plaintiffs within the defined class. The plaintiffs also had to prove, but failed to prove, that the Hospital knewor should have known of the existence of the accepted case prior to the time it brought suit.
That there is no one in the class is not surprising. The evidence showed that once the Hospital or its attorneys became aware of the existence of an accepted worker's compensation case, it pursued payment from the worker's compensation carrier or the employer and withdrew any pending court case.
It appears to the court that the genesis of this case was plaintiffs' misconceptions about the limits of the worker's compensation bar on suit against patients and about the duties of injured employees to provide information to medical providers. The plaintiffs seemed to think that a patient's mere mention of the word "work-related" was sufficient to forever bar a medical provider from taking any action to collect payment from the patient. This, of course, is not the case. Only an accepted worker's compensation case of which the provider has knowledge bars CT Page 11028 suit. Many patients who say their injury is work related do not have accepted worker's compensation cases. Many patients who have accepted worker's compensation cases, including many of the named plaintiffs, fail to give the provider notice of the accepted case.
The plaintiffs and their attorneys appeared to assume that they had no duty to provide any information to the Hospital. Mr. Elkins' response that it was "not his fault" that it took three years before the Hospital learned the true identity of the employer who was responsible for Elkins' worker's compensation injury (after Elkins had provided the name of the wrong employer) was symbolic of the attitude of all the plaintiffs. The plaintiffs as patients had a duty to provide the Hospital with sufficient information to permit the Hospital to locate a worker's compensation source of payment. The plaintiffs seemed to be unaware of this duty when they brought this suit.
The 600-700 files at issue in Figueroa, were by definition files which the Commission did not consider to constitute "accepted" worker's compensation cases. Some of those cases may have been "accepted cases" in which the employer made worker's compensation payments with no report to the Commission. However, for purposes of Class Certification, there was no evidence that any of the Figueroa cases were "accepted" cases, and therefore, they cannot be considered as part of the purported class.
As confirmed by Commissioner Frankl, in cases where an injured employee has not filed a claim with the Workers' Compensation Commission a provider such as the Hospital, cannot obtain a hearing before the Commission, and can "absolutely" take action in court against those injured employees.
The plaintiffs, thus, have presented evidence relating to numerous claims that do not come within the purported class, but have presented no evidence of any plaintiff, even the named plaintiffs, who are members of the purported class.
Commonality and Typicality
"[C]ommonality is satisfied where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." Marr v. WMXTechnologies, Inc., 244 Conn. 676, 682, 711 A.2d 700 (1998); Kubas v.Hartford Financial Services, Co., Superior Court at Tolland, 27 Conn. L. Rptr. No. 16, 565, 566 (October 2, 2000).
Typicality is in many respects similar to commonality. "Typicality is satisfied when the representative party's claim arises out of the same CT Page 11029 event or practice that gives rise to the claims of the class members and is based on the same legal or remedial theory." (Internal quotation marks omitted.) Walsh v. National Safety Associates, Inc. 44 Conn. Sup. 569,585, 695 A.2d 1095 (1996), aff'd, 241 Conn. 278 (1997), citing toCampbell v. New Milford Board of Education, supra, at 365. "The representative's claims are only required to be typical of, not identical with, the claims of other class members." Walsh v. National SafetyAssociates, Inc., supra.
In order to state a cause of action for violation of Connecticut worker's compensation law and public policy (Counts Two, Three, Four, Five, Eight, Nine), each plaintiff must prove that the Hospital filed suit against him to recover for medical treatment at a time when the Hospital knew or should have known that the plaintiff had an accepted worker's compensation case. As stated above, whether and when the Hospital had such knowledge varies with each plaintiff. This is particularly true because of the three different ways of establishing an accepted worker's compensation case. The Hospital's ability to discover the existence of an accepted case is vastly different with respect to an employee/patient who filed a claim with the Commission, as opposed to one whose case is deemed to be "accepted" by virtue of the employer's payment of bills without any notification to the Commission.
In the First Count of the operative Complaint, the plaintiffs allege that the defendant abused process for a wrongful and malicious purpose to attain an unjustifiable end. An action for abuse of process lies against any person using a legal process against another in an improper manner or to accomplish a purpose for which it was not designed. Honan v. Dimyan,52 Conn. App. 123, 130, 726 A.2d 613 (1999); Varga v. Pareles,137 Conn. 663, 667, 81 A.2d 112 (1951); Schaefer v. O.K. Tool Co.,110 Conn. 528, 532-33, 148 A. 330 (1930).
Where a medical provider attempts for years to ascertain whether its payment avenue lies under worker's compensation, never finds any evidence that it does, and finally brings suit against a former patient to collect a long overdue medical bill, it is impossible to say that the provider was using the collection process for an unjustifiable end. The foregoing facts apply to almost all of the named plaintiffs. While the merits of a cause of action are generally not to be considered when certifying a class, the facts presented at the hearing were so devoid of any evidence of abuse of process with respect to the named plaintiffs, that good conscience militates against allowing this action to continue as a class action. Allowing the case to continue as a class action would itself constitute condoning an abuse of process by the plaintiffs.
In order to establish a cause of action under Count One (Abuse of CT Page 11030 Process), Count Seven (Intentional Infliction of Emotional Distress), Count Ten (Defamation), and Count Eleven (False Light), the plaintiffs must prove intent and/or knowledge of the Hospital. Had the Hospital adopted a procedure of immediately bringing suit against all patients, even those with work-related injuries, then intent to abuse process, and/or inflict distress upon the plaintiffs might be inferred. However, there was no evidence of such procedure. The Hospital went to rather extraordinary lengths to attempt to collect its bills prior to resorting to suit. Therefore, if there was an intent to abuse process, or inflict distress, such an intent will have to be proved, not by reference to the Hospital's procedures, but on a case-by-case basis. The requisite intent to abuse process, to defame, or to inflict emotional distress will necessarily vary from plaintiff to plaintiff.
The court believes that the class should not have been certified because there is no evidence that there is anyone, including the named plaintiffs, who are within the purported class. Even if such plaintiffs did exist, they would have to prove the Hospital's knowledge and intent in order to recover. The plaintiffs failed to introduce any evidence that could permit any inference as to the Hospital's knowledge or intent with respect to the purported class as a whole. Therefore, such elements will have to be proved with respect to each plaintiff and are likely to be different with respect to each plaintiff. The plaintiffs have failed to establish numerosity, commonality or typicality as required under Practice Book Sections 9-7 and 9-8. Therefore, the class is ordered decertified.
By the court,
Aurigemma, J.